IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CRAWFORD HEATING AND COOLING Co.,<br>　　Plaintiff,<br><br>v.<br><br>CLEAN AIR ENGINEERING MARITIME Inc.,<br>　　Defendant. | Case No. 4:25-cv-04129-JEH-RLH |

**Order**

　　Now before the Court is the Defendant Clean Air Engineering Maritime Inc.'s Motion to Dismiss (D. 5).[1] For the reasons set forth, *infra*, the Defendant's Motion is DENIED.

**I**

　　On May 28, 2025, the Plaintiff, Crawford Heating & Cooling Co. ("Crawford"), filed a Complaint against the Defendant, Clean Air Engineering Maritime Inc. ("CAEM"), in the Circuit Court for the Fourteenth Judicial Circuit of Illinois in Rock Island County. (D. 1-1 at ECF p. 1). On July 2, 2025, the Defendant filed a Notice of Removal to the Central District of Illinois, Rock Island Division. (D. 1). On July 9, 2025, the Defendant filed a Motion to Dismiss (D. 5), and on July 22, 2025, the Plaintiff filed its Response and Memorandum in Opposition to the Motion to Dismiss. (D. 7 & 8). On July 29, 2025, the Defendant sought leave to file a Reply which was granted by the Court on July 30, 2025. (D. 9); *see* 07/30/2025 Text Order. The matter is now fully briefed.

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

II

According to the Complaint, the Plaintiff, Crawford, is an Illinois corporation doing business in Rock Island County. (D. 1-1 at ECF p. 1). The Defendant, CAEM, is a "California corporation that is in the business of capturing and treating ship stack exhaust from large container ships." *Id.* Crawford alleges that on several occasions it was contacted by CAEM seeking quotes to perform work and that CAEM entered into multiple contracts with Crawford to provide products that were made in Rock Island County. *Id.* ECF p. 2. For example, in 2017, Crawford alleges it contracted with CAEM to design and build a "telescoping ducting system for a crane." *Id.* In 2022, Crawford alleges it was contacted by and contracted with CAEM to design and fabricate "an insulated boom duct for a crane." *Id.* Similarly, in 2023, Crawford states that it was contacted by and contracted with CAEM to "design and fabricate exhausting for generators" and "ducting for ships." *Id.* Finally, in 2024, Crawford alleges that it was contacted by and entered into three different contracts with CAEM to build various products, but that CAEM has failed to pay for one of the products it provided in full. *Id.* at ECF p. 2-3. Specifically, Crawford alleges that it provided a quote to CAEM on January 30, 2024, for a modular hood assembly and that CAEM issued a purchase order to Crawford in Rock Island County accepting the quote which totaled $478,922. *Id.* at ECF p. 3. Following its receipt of the purchase order on February 15, 2024, Crawford alleges that it fabricated and shipped the modular hood assembly to CAEM and that it has accepted and used the product since being delivered. *Id.* However, Crawford states that CAEM has only made two payments on the modular hood assembly, the first totaling $150,000, and the second totaling $82,230, leaving an outstanding balance of $246,692 due. *Id.* Crawford alleges it has demanded payment on the balance, but that CAEM has refused. *Id.*

Accordingly, Crawford filed the instant action alleging breach of contract. The Defendant, CAEM, has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3).

### III

### A

CAEM has first moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). Rule 12(b)(2) asserts a "lack of personal jurisdiction". FED. R. CIV. P. 12(b)(2). Put differently, a Motion to Dismiss pursuant to 12(b)(2) is a challenge to a court's ability to bring a person into its adjudicative process. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). "A federal district court's personal jurisdiction over a defendant is established in a diversity-jurisdiction case when the plaintiff serves the defendant with a summons or files a waiver of service, but only so long as the defendant is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located—here, Illinois."[2] *Id.* The Fourteenth Amendment's due-process clause limits a court's personal jurisdiction in a diversity case and "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations'". *Id.* (citations omitted) (quoting *Int'l Shoe Co. v. Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945)). "To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction" which requires an evaluation of the "specific personal jurisdiction by reference to the particular conduct underlying the claims made in

---

[2] The Plaintiff's Complaint alleges CAEM is subject to "specific and general personal jurisdiction in Illinois" (D. 1-1 at ECF p. 1); however, the Plaintiff's Response to the Defendant's Motion to Dismiss fails to respond to the Defendant's argument that it is not subject to the general jurisdiction of Illinois Courts. *See* (D. 8). Plaintiff's failure to respond results in waiver. *LeSEA Inc. v. LeSEA Broad. Corp.*, 379 F. Supp. 3d 732, 739 (N.D. Ind. 2019) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). Therefore, the Court focuses its analysis on the specific-jurisdiction inquiry.

the lawsuit." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* "Personal jurisdiction in breach-of-contract actions often turns on whether the defendant 'purposefully availed' himself of the privilege of conducting business or engaging in a transaction in the forum state." *Id.* "The defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that he could be haled into court there." *N. Grain Mktg., LLC*, 743 F.3d at 492. "With respect to contract disputes, 'contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum.'" *Id.* (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003)). "Instead, we conduct a context-sensitive analysis of the contract, examining 'prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other.'" *Id.* "So long as a commercial defendant's efforts are purposefully directed toward residents of the forum state, the fact that the defendant hasn't physically entered it does not defeat personal jurisdiction there." *Id.* Indeed, "'[t]he question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction." *Id.* (quoting *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985)).

In the first instance, "[t]he plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it." *Id.* at 491. When a district court rules on a defendant's motion to dismiss based on written materials without an evidentiary hearing, the plaintiff must only make out a *prima facie* case of personal

jurisdiction. *Id.* In deciding whether personal jurisdiction exists, a "federal district court sitting in diversity looks to the long-arm statute of the state in which it is sitting to determine whether it has personal jurisdiction over the defendants." *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986). Therefore, the Court looks to the Illinois long-arm statute, 735 ILL. COMP. STAT. § 5/2-209, for guidance. *N. Grain Mktg., LLC*, 743 F.3d at 491. It provides, in relevant part, that Illinois courts may exercise jurisdiction over a person "as to any cause of action arising from . . . (1) [t]he transaction of any business within [Illinois; or] . . . (7) [t]he making or performance of any contract or promise substantially connected with [Illinois]". 735 ILL. COMP. STAT. § 5/2-209(a)(1),(7). It also provides that a "court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILL. COMP. STAT. § 5/2-209(c).

    In this case, the relevant facts do not appear to be in dispute. To the extent that they are, the Court is to "resolve factual disputes in the plaintiff's favor when evaluating whether [a *prima facie* case of personal jurisdiction] has been made." *N. Grain Mktg., LLC*, 743 F.3d at 491. Those facts are as follows. Beginning in 2017, the Defendant, a California corporation with its principal place of business in San Pedro (D. 5-1 at ECF p. 1), began directing communications to the Plaintiff, an Illinois corporation with its principal place of business in Rock Island County, and solicited various proposals that resulted in multiple separate contracts in 2017, 2022, and 2023 for various pieces of equipment. (D. 8 at ECF at ECF p. 2). Most recently, in 2024, the Defendant again solicited "three separate proposals for products to be designed and fabricated in Rock Island County." *Id.* One of those proposals, currently in dispute, included the fabrication of a modular hood assembly, for which the Plaintiff first provided the Defendant with a quote, #4482. *Id.* The Plaintiff's quote, dated January 30, 2024, included the Rock Island County

address. *Id.* Subsequently, the Defendant issued a purchase order to the Plaintiff in Rock Island County accepting the quote on February 15, 2024, which was paid for using a California bank account. *Id.*; (D. 5 at ECF p. 3). The Plaintiff designed and fabricated the products in Rock Island County. (D. 8 at ECF p. 3). However, the Plaintiff shipped the equipment to California and paid for "its agents [to] travel to California to erect its product" for CAEM in California. (D. 5 at ECF p. 3 & 9-1 at ECF p. 7-8). The Defendant does not do business in Illinois and does not have any offices in Illinois. (D. 5 at ECF p. 2). Furthermore, the Defendant states that it did not send "any of its employees" to Crawford's facilities at any time during the order or fabrication of the modular hood assembly and that "both parties negotiated the contract and communicated with each other remotely from their respective home states of Illinois and California." (D. 5 at ECF p. 3-4 & D. 9-1 at ECF p. 3).

CAEM relies primarily on two cases to support its assertion that this Court lacks specific personal jurisdiction in this case. (D. 5 at ECF p. 6-8). First, CAEM relies on *Northern Grain Mktg., LLC*, 743 F.3d at 489 (hereinafter "Northern Grain"). In *Northern Grain*, the plaintiff was an Illinois-based grain buyer, and the Defendant, Martin Greving ("Greving"), lived and farmed in Wisconsin since 1971. *Id.* Northern Grain sued Greving in the Northern District of Illinois claiming that he had repudiated several contracts—contracts that Greving denied ever entering into and were unsigned—and Greving moved to dismiss for lack of personal jurisdiction. *Id.* at 489-90. There, the Seventh Circuit found that Greving "lacks minimum contacts with Illinois that would permit the district court . . . to exercise specific personal jurisdiction over him" consistent with the due process clause of the Fourteenth Amendment. *Id.* at 489. In so finding, the Seventh Circuit determined that Greving had "only set foot in Illinois once" to attend a seed-corn meeting, at which he became acquainted with a representative from Northern

Grain, Tom Wilson ("Wilson"). *Id.* at 489. However, there was "no indication . . . that Greving attended the meeting in an effort to find grain buyers." *Id.* Indeed, "virtually everything else about Greving's contractual relationship with Northern Grain was based in Wisconsin." *Id.* Greving met with Wilson in Wisconsin at his farm, at a local Denny's, and delivered his "Wisconsin-grown grain to a grain elevator in Wisconsin." True, the checks Greving received from Northern Grain were drawn from Illinois banks, but that was not enough to "show that [Greving] purposefully availed himself of the privilege of conducting business in Illinois", even though he "knew that Northern Grain was located in Illinois." *Id.* at 489-90. The Seventh Circuit also observed that "there is no indication that Greving initiated this business relationship at all" and had no "intent to solicit business" while at the seed-corn meeting; instead, there was nothing to suggest that Greving's "meeting Wilson [at the seed-corn meeting] was anything other than fortuitous on his part." *Id.* at 494. Moreover, "the contract was performed entirely in Wisconsin rather than in the forum state" and involved discrete tasks that required no continuing obligation from Greving. *Id.* at 494-495. "Aside from contracting with and receiving money from this Illinois-based buyer—activities that Greving completed entirely from within the Badger State's borders—Greving ha[d] no relevant interaction with Illinois." *Id.* at 495. And, even though Greving "didn't just have one contract for a discrete delivery of grain", "the contracts at issue were formed remotely or in the nonforum state, and they required the defendant to deliver grain grown in the nonforum state to a grain elevator also located in the nonforum state." *Id.* at 496. The Seventh Circuit determined that personal jurisdiction over Greving was lacking. *Id.*

    CAEM uses this case to argue that it "has not availed itself of the privilege of conducting business in Illinois" because, like in *Northern Grain*, the farmer did not travel to Illinois, communicated remotely, and because the contract was

formed remotely or in the nonforum state. (D. 5 at ECF p. 3). Here, CAEM similarly asserts that it did not travel to Illinois and both parties negotiated the contracts from the respective home states. *Id.* However, while there are some similarities between the *Northern Grain* case and the instant one, there are also important distinguishing features. There, the plaintiff—the same party who initiated the contract—sued the defendant, a Wisconsite, in the forum state of Illinois. *N. Grain Mktg., LLC*, 743 F.3d at 490. Here, the Plaintiff, Crawford, is suing in the forum state of Illinois, only after the Defendant, CAEM, solicited the contract from Crawford, a corporation based in Illinois. Moreover, the defendant contesting jurisdiction in *Northern Grain* was a farmer that traveled to Illinois without "any apparent intent to solicit business" in Illinois, 743 F.3d at 494, and the "purposeful-availment requirement ensures that a defendant's amenability to jurisdiction is not based on 'random, *fortuitous*, or attenuated contacts'". *Id.* at 493 (emphasis added). Here, unlike the farmer's "fortuitous" meeting with the Northern Grain representative in Illinois, *id.* at 494, CAEM communicated with Crawford with the intention of soliciting potential contract proposals. (D. 8 at ECF p. 2-3). As to the fact that CAEM did not enter Illinois or conducted negotiations remotely, personal jurisdiction is proper "[s]o long as a commercial defendant's efforts are purposefully directed toward residents of the forum state, the fact that the defendant hasn't physically entered it does not defeat personal jurisdiction there." *N. Grain Mktg., LLC*, 743 F.3d at 493. Lastly, in *Northern Grain*, the Court also noted that the defendant "did not sign any of the documents." 743 F.3d at 490. Here, CAEM is not claiming that it was not a party to the contract currently in dispute or that it did not contact Crawford. Instead, CAEM is claiming the modular hood assembly that Crawford provided did not confirm with its requirements. (D. 5 at ECF p. 3). And *Northern Grain* made clear that to "support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must 'directly

relate to the challenged conduct or transaction.'" 743 F.3d at 492. In this case, CAEM's contacts with the forum state directly relate to the challenged transaction because it is CAEM's very communications with Crawford that gave rise to the instant contract dispute.

Second, CAEM also relies on *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., Inc.*, 597 F.2d 596, 597 (7th Cir. 1979), in which the Court determined that Wisconsin lacked personal jurisdiction over a nonresident corporation. (D. 5 at ECF p. 7). In that case, the plaintiff, Lakeside Bridge & Steel Company ("Lakeside"), was a Wisconsin corporation with its principal place of business in the same. *Id.* The Defendant, Mountain State Construction Company ("Mountain State"), was a West Virginia corporation with its principal place of business there. *Id.* Mountain State had "no place of business, property, bank deposits, telephone, or telephone listing in Wisconsin and has never sent any officer, agent, or employee to that state; nor has it had any other kind of contact with Wisconsin except for the events that gave rise to this action." *Id.* The origin of the action began while Mountain State was preparing to bid on a project in Virginia and "was visited in its offices in West Virginia by Lakeside's agents, who solicited the subcontract for the structural assemblies and left a proposal." *Id.* at 598. When Mountain State was awarded the contract, Mountain State accepted Lakeside's proposal by mailing a purchase order, but not before Lakeside modified it and returned it to Mountain State. *Id.* at 600. Subsequently, all correspondence occurred by telephone or mail, and Lakeside manufactured the goods in Wisconsin and shipped them to a project site in Virginia, but the Defendant later withheld payment because it claimed certain goods were defective. *Id.* Lakeside filed suit in Wisconsin. *Id.* Mountain State moved to dismiss, claiming a lack of personal jurisdiction, and the Court agreed with the Defendant that Wisconsin lacked jurisdiction over the Defendant. *Id.* at 604.

CAEM argues that the present facts compel dismissal based on *Lakeside*. (D. 9-1 at ECF p. 5). Among other things, CAEM argues that, "like the defendant in *Lakeside*, [CAEM] did not travel to the forum state in connection with the contract at issue" and "contracted with a business in the forum state for the fabrication of industrial assemblies" to be shipped outside of the forum state and that, "like the defendant in *Lakeside*, [CAEM] initiated a transaction with a business in the forum state". (D. 9-1 at ECF p. 5). As to the first two points, the Court agrees with CAEM as to the similarities between this case and the facts in *Lakeside*. However, as to the last, the Court disagrees with CAEM's characterization; it was the plaintiff, not the defendant, who initiated the transaction in *Lakeside*, and then sued the non-resident defendant in the forum state of Wisconsin, "[i]ndeed, as far as initial solicitation is concerned . . . agents of the *plaintiff* in *Lakeside* solicited the contract by personally traveling to the defendant's offices in West Virginia." *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985) (emphasis in original). In fact, many "district courts in this circuit have repeatedly addressed the question of whether *Lakeside* can be distinguished based on a nonresident defendant's solicitation of a contract" and "have replied affirmatively," "relying on the defendant's solicitation of the plaintiff as a factor supporting their decision to assert personal jurisdiction." *Id.* at 1202 (collecting cases). This Court joins those courts in distinguishing *Lakeside* from the instant facts in which the nonresident defendant, CAEM, solicited the forum plaintiff, Crawford, as a factor supporting the assertion of personal jurisdiction.

In support of personal jurisdiction, Crawford relies on *Bally Exp. Corp.*, 904 F.2d at 401, to argue that this Court can properly exercise personal jurisdiction over CAEM.[3] (D. 8 at ECF p. 4-5). In that case, the Seventh Circuit examined the

---

[3] CAEM's Reply does not address Crawford's assertion in its Response to the Motion to Dismiss that *Bally Exp. Corp.*, 904 F.2d at 401, is instructive in this case. *See* (D. 9-1).

portion of the Illinois long-arm statute which provides in relevant part that a "nonresident submits to the jurisdiction of the Illinois courts by transacting business within the state." *Id.* at 401. "Illinois courts have held that a single business transaction is sufficient to bring a foreign defendant within the statute, so long as the cause of action arises from the Illinois transaction." *Id.* at 402. There, the Seventh Circuit affirmed the district court's determination that personal jurisdiction was proper because the defendant "had submitted to Illinois jurisdiction by transacting business with [the plaintiff] in Illinois." *Id. Bally Exp. Corp.* made note of the fact that the defendant contacted the plaintiff and arranged for the plaintiff to ship the equipment, which was manufactured in and shipped from Illinois to Panama, characterizing it as "an act which was 'clearly a transaction of business within Illinois and therefore within the Illinois long-arm statute.'" *Id.* Payments were rendered in Illinois and the Seventh Circuit determined it was a "fair conclusion" to find the contract was entered into in Illinois, given the plaintiff's "principal place of business is Illinois and [the defendant] initiated the transaction with [plaintiff]." *Id.* In *Bally Exp. Corp.* the Seventh Circuit also looked favorably upon another Illinois case which determined that it was "important" that "the defendant voluntarily entered into a business transaction with an entity he knew, or should have known, was an Illinois resident" and that the contract "was formed in Illinois when plaintiff accepted defendant's order" and that the contract was "performed in Illinois, in that the order was received here and the requested goods were shipped from here". *Id.* at 403 (quoting *Empress Int'l, Ltd. v. Riverside Seafoods, Inc.* 445 N.E.2d 371, 374 (Ill. App. Ct. 1983)).

As Crawford correctly points out, as in *Bally Exp. Corp.*, the defendant initiated the relevant transaction with the plaintiff whose principal place of business was Illinois. The same is true here. CAEM knew or should have known

11

from having multiple contracts with Crawford beginning as early as 2017, that it was doing business with an Illinois corporation. The quote Crawford provided to CAEM, at CAEM's request, also contained its Rock Island County address and the purchase order was sent to Crawford's Rock Island County address. (D. 8 at ECF p. 2-3). Moreover, as the Seventh Circuit explained in *Bally Exp. Corp.* in support of personal jurisdiction, at least a large portion of the instant contract was performed in Illinois "in that the order was received [in Illinois] and the goods requested were shipped from [Illinois]". 804 F.2d at 403.

That the Court finds personal jurisdiction proper in this case is also buttressed by the text of the Illinois long-arm statute which states, that courts may exercise jurisdiction as over a person "as to any cause of action arising from . . . (1) [t]he transaction of any business within [Illinois; or] . . . (7) [t]he making or performance of any contract or promise substantially connected with [Illinois]", 735 ILL. COMP. STAT. § 5/2-209(a)(1),(7), both of which are present here. And CAEM is correct that "an individual's contract with an out-of-state party doesn't suffice on its own to establish sufficient minimum contacts in the other party's home forum", *N. Grain Mktg. LLC,* 743 F.3d at 496, but in this case, it is not the contract alone. To the contrary, '"[t]he question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional property of personal jurisdiction in a suit arising out of the transaction.'" *N. Grain Mktg., LLC*, 743 F.3d at 493 (quoting *Madison Consulting Grp.*, 752 F.2d at 1202). Here, CAEM solicited the services of Crawford, an Illinois corporation, and made payments to Crawford's Rock Island County address, and at least a substantial part of the contract was performed in Illinois. (D. 8 at ECF p. 2-3). As such, a Court may exercise specific jurisdiction, whereas here, "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged

injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702. Therefore, the Court finds specific personal jurisdiction in this case and accordingly denies CAEM's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).

**B**

CAEM also asserts that this Court is not the proper venue for this action. (D. 5 at ECF p. 8). CAEM relies on 28 U.S.C. § 1391(b)(2), which provides that venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated". Crawford contends that § 1391 does not apply to removed actions, § 1441 does, and that, even § 1391 does apply, venue is still proper.[4] (D. 8 at ECF p. 8-10). For the reasons that follow, the Court agrees with the Plaintiff that venue is proper in the Central District of Illinois, Rock Island Division.

By its own terms, § 1391 governs the venue of "all civil actions *brought* in the district courts of the United States". 28 U.S.C. § 1391(a)(1) (emphasis added). This action, however, was removed to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (D. 1 at ECF p. 1). Therefore, it was not "brought" in any district court of the United States. *See* 28 U.S.C. § 1391(a)(1); *Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665 (1953) ("But even on the question of venue, § 1391 has no application to this case because this is a removed action."); *Scherr v. West. Sky Fin., LLC*, 77 F. Supp. 3d 770, 773 (N.D. Ill. 2015) (determining that venue in an action removed from state court is governed by the removal statute, 28 U.S.C. § 1441, not the general venue statute). Therefore, in a removed action such as this one, § 1441(a) governs the proper venue. *Polizzi*, 345 U.S. at 665-

---

[4] CAEM's Reply does not address the argument raised by Crawford in its Response to the Motion to Dismiss that § 1441 applies, nor does it mention the venue issue at all. *See* (D. 9-1 at ECF p. 7).

66. It provides in relevant part, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. In this case, the action was brought in Rock Island County and the Defendant removed it to the Rock Island Division of the Central District of Illinois, which embraces Rock Island County. (D. 1). Therefore, because venue is governed by and proper under § 1441, the Court denies the Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3).

### IV

For the reasons set forth, *supra*, the Defendant's Motion to Dismiss is DENIED.

*It is so ordered.*

Entered on August 11, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE